UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARIEL PREFERRED RETAIL GROUP, LLC, ET. AL., ) ) ) Plaintiffs, ) ) vs. ) ) CWCAPITAL ASSET MANAGEMENT, ) ET. AL., ) ) Defendants. ) | Case No. 4:10CV623SNLJ |

## MEMORANDUM

Plaintiffs have filed this multicount lawsuit alleging willful trademark infringement, unfair competition, tortious interference, unjust enrichment, and fraud. This matter is before the Court on the defendants' motion to dismiss Counts VII (tortious interference) and IX (fraud) [26], filed February 24, 2011. All responsive pleadings have now been filed and the matter is ripe for disposition.

Defendants contend that 1) the plaintiffs filed an amended complaint which went beyond the scope of their motion for leave to file an amended complaint by adding three (3) new causes of actions, including Count VII (tortious interference) and Count IX (fraud); 2) Count VII fails to meet minimum pleading standards under Missouri law; and 3) Count IX fails to meet minimum pleading standards under both Missouri law and federal law (Rule 9(b) Federal Rules of Civil Procedure). Plaintiffs contend that their amended complaint meets both state and federal pleading requirements.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and

designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 550 U.S. at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." Id., 550 U.S. at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct", the complaint must be dismissed. Cole v. Homier Distributing Co., Inc., 599 F.3d. 856, 861 (8th Cir. 2010)(*citing* Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937. 1950 (2009)).

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.(internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d. 736, 740 (8th Cir. 2002). In

viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 550 U.S. at 556; Neitzke v. Williams, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's factual allegations."). However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." Benton v. Merrill Lynch & Co., 524 F.3d. 866, 870 (8th Cir. 208). Further, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937. 1950 (2009)(*quoting* Twombly, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S.Ct. at 1950. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. at 1950. With this plausibility standard in mind, this Court turns to an examination of the plaintiff's complaint.

  Firstly, the Court agrees that the amended complaint goes beyond the scope of the motion for leave to file the amended complaint[1]. Plaintiffs sought to add an additional plaintiff, The

---

[1] [19], filed January 19, 2011.

3

Prescott Group, because The Prescott Group (a corporate affiliate of plaintiff Ariel Preferred Retail Group) formally owns the trademarks at issue. Plaintiffs further sought to add an additional defendant, Fred Meno, because Mr. Meno is the receiver for the retail properties which are the subject of this lawsuit. Finally, plaintiffs informed the Court that the proposed amended complaint "clears up potential legal issues, clarifies the claims at issue, and is not interposed for delay or any improper purpose". Document 18 at pg. 3. Nowhere in the motion is there any suggestion whatsoever of adding completely new claims of tortious interference and fraud.[2] Adding these claims does not constitute the "clear[ing] up potential legal issues" or "clari[fying] the claims at issue". For this reason alone, the Court would seriously entertain granting the instant motion. However, since the parties have briefed the more substantive matters raised by the instant motion, the Court will address those in reaching its ultimate decision.

This dispute arises out of complicated relationship involving the management of certain financially distressed premium outlet retail malls. Plaintiff Ariel acted as property manager and leasing agent for these malls (which the parties referred to as the "Assets"). The owners of these properties (hereinafter referred to as the "Borrowers") defaulted on the financing loans for these properties in April 2009.[3] Defendant CWCapital Asset Management (hereinafter referred to as

---

[2]Plaintiffs also added a new claim for unfair competition in Count VIII. However, the instant motion does not address Count VIII.

[3]The parties dispute the exact nature of the relationship between plaintiffs and the Borrowers. Defendants appear to believe that the plaintiffs were an "affiliate" of the limited partnerships that became the Borrowers. Plaintiffs contend that they have no connection to the Borrowers other than plaintiff Prescott's affiliate, Prescott Capital Management LLC, created plaintiff Ariel in 2005 to professionally manage, lease, and provide development services to the Assets; while, plaintiff Prescott provided substantial investment in the development and ownership of certain trademarks for use in conjunction with the marketing of the Assets. Plaintiff Prescott authorized plaintiff Ariel to use the subject trademarks. This dispute, however, is not germane to the issues raised in the instant motion, and need not be resolved at this point in time.

4

simply "CW") was retained as the Special Servicer[4] on the loans in June 2009.  Ariel continued to manage the Assets until the Superior Court of Gwinnett County, Georgia entered a consent order on December 16, 2009 appointing Fred Meno as Receiver.[5]  As Receiver, defendant Meno assumed immediate possession and full control of the troubled properties.  He contracted with his employer, defendant Woodmont, to perform the property management and leasing services pursuant to the consent order.

After CW was retained as the Special Servicer, and prior to the appointment of Meno as the Receiver, plaintiffs signed a trademark licensing agreement that authorized CW and any receiver to use Ariel's trademarks in connection with the management malls[6].   Between August 2009 and December 2009 the parties unsuccessfully negotiated  for another trademark licensing agreement.

Since this is a diversity case, the Court will apply federal procedural rules and Missouri substantive law.  Cole v. Homier Distributing Co., Inc., 599 F.3d. 856, 861 (8th Cir. 2010); Ashley County , Arkansas v. Pfizer, Inc., 552 F.3d. 659, 665 (8th Cir. 2009).

## Count VII - Tortious Interference

In Count VII of the plaintiffs' amended complaint alleges a claim for tortious interference with contracts and business expectancies.  Under Missouri law, a tortious interference claim

---

[4]As a "Special Servicer", CW assumed financial control of the Assets and worked with loan servicers and loan trustees, as well as with the Borrowers, to evaluate options and potential restructuring of the financial backing of the Assets.

[5]Civil Action No. 09A-10714-2.

[6]Plaintiffs contend that this was a "draft" trademark licensing agreement only to be temporary and a later final licensing agreement was to be signed by the parties. The Court makes no finding whatsoever, in connection with the instant motion, as to the substantive and/or legal nature of the trademark licensing agreement that was in place from August 2009 through December 2009 or whether it continued past December 2009.

requires that a plaintiff prove: 1) a contract or a valid business expectancy; 2) defendant's knowledge of the contract or relationship; 3) intentional interference by the defendant inducing or causing a breach of contract or relationship; 4) the absence of justification; and 5) damages resulting from the defendant's conduct. Cole v. Homier Distributing Co., Inc., at 861 *citing* Horizon Mem'l Group, LLC v. Bailey, 280 S.W.3d. 657, 662 (Mo.App. 2009); *see also*, Cedarbridge, LLC v. Eason, et. al., 293 S.W.3d. 462, 469 (Mo.App. 2009) *citing* Envirotech, Inc. v. Thomas, 259 S.W.3d. 577, 590 (Mo.App. 2008). Furthermore, a plaintiff need not have an existing contract with a third party to maintain a claim for tortious interference. Cole v. Homier Distributing Co., at 861 *citing* Stehno v. Sprint Spectrum, L.P., 186 S.W.3d. 247, 251 (Mo. 2006). It is sufficient that a plaintiff have a probable future business relationship that gives rise to a reasonable expectancy of financial benefit. Cole v. Homier Distributing Co., *supra.* Moreover, a party to a contract cannot tortiously interfere with his own contract. Cole v. Homier Distributing Co., at 861 *citing* BMK Corp. v. Clayton Corp., 226 S.W.3d. 179, 191 (Mo.App. 2007); Wigley v. Capital Bank of Southwest Missouri, 887 S.W.2d. 715, 722 (Mo.App. 1994). However, this rule "does not mean that `a party may not have a valid business expectancy in a preexisting and independent business relationship just because the preexisting relationship relies upon a third-party supply contract to furnish the subject of their agreement.'" Cole v. Homier Distributing Co., at 861-62 *quoting* BMK Corp., at 191.

Although Rule 8 Federal Rule of Civil Procedure governs the pleading of claims in federal court and sets the standard for "notice pleading" in federal court, a party must still plead sufficient facts to state a tortious interference claim that is plausible on its face. *See*, iCARD Stored Value Solutions, L.L.C. v. West Suburban Bank, 2008 WL 619236, *5 (E.D.Mo. March 3, 2008). Thus, a plaintiff must plead that defendant not only induced a breach of the contract/business

expectancy but that the defendant had knowledge of said contract and that defendant's actions were done without justification and/or by "improper means". Envirotech, at 590-91; Schott, at 628-29; *see also*, iCARD, at *5. A defendant is justified in inducing a breach of contract unless the defendant uses improper means to induce the breach. Schott, at 628; *see also*, Staple Cotton Cooperative Assoc. v. D.G. and G, Inc., 2007 WL 735015, *2 (E.D.Mo. March 8, 2007)(*citing* Schott, *supra.*). "The absence of justification is an essential element of the claim for interference with contract. Mere conclusions of the pleader not supported by factual allegations cannot be taken as true, and therefore, must be disregarded in determining whether the petition states a claim upon which relief can be granted." Schott, at 628-29 (internal citations omitted). An "absence of justification" refers to the absence of a legal right to justify the actions taken by the defendant in inducing the breach. Envirotech, at 590 (citation omitted). If the defendant has a legitimate interest, economic or otherwise, in the contract or business expectancy that the plaintiff alleges was breached, then the plaintiff must establish that defendant employed improper means in inducing the breach; i.e., even if there is economic justification for interfering with a contract/business expectancy, a defendant cannot employ improper means. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d. 247, 252 (Mo. 2006).

Thus, improper means must be pled and "are those which are independently wrongful and withstanding injury caused by the interference." Environmental Energy Partners, Inc. v. Siemens Bldg. Tech., Inc., 178 S.W.3d. 691, 703 (Mo.App. 2005); Staple Cotton Cooperative Assoc., at *2 (*citing* Environmental Energy Partners, *supra.*); *see also*, Wigley, at 721. Improper means include, "those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or

7

common law." Stehno, at 252; *see also*, Avidair Helicopter Supply, Inc. v. Rolls-Royce Corp., 2009 WL 3161168, *5 (W.D.Mo. September 28, 2009).

Defendants assert that plaintiffs have failed to allege that there were third-party contracts of which the defendants were aware; and that the defendants induced the breach of these contracts by improper means. Plaintiffs assert that they have stated enough facts by which the Court can "infer" that the defendants were aware of these contracts. Plaintiffs further contend that defendants used improper means calculated to essentially put the plaintiffs out of business.

The Court has carefully reviewed the plaintiffs' amended complaint, as well as its responsive pleading to the motion to dismiss. Plaintiffs' responsive pleading for the most part simply attempts to argue the merits of its lawsuit. They repeat the undisputed elements of a tortious interference claim but fail to note where in their complaint they specifically meet the pleading requirements for each of the elements.

Firstly, while it is true they need not name specifically the names of customers that allegedly breached their contracts, plaintiffs have failed to even provide minimal facts identifying the existence of these third-party contracts which they allege have been breached. They claim that these facts have been provided in discovery so defendants "should" know the identity of certain trade creditors which the Court assumes are connected to these unidentified third-party contracts. However, this misses the point of pleading properly a claim for tortious interference. Furthermore, for the first time, plaintiffs now appear to allude that these unidentified third-party contracts may also involve employment contracts with (former) employees of plaintiffs. Nowhere in the amended complaint, and especially in Count VII, can anyone reasonably infer that employment contracts with (former) employees of the plaintiffs are subject to the tortious interference claim.

Furthermore, nowhere in the amended complaint or in Count VII do the plaintiffs allege that the defendants were aware of these unidentified third-party contracts. Again, whatever defendants may or may not have learned through initial discovery is not relevant to the issue as to whether plaintiffs have properly pled this element of their tortious interference claim.[7] Plaintiffs admit that they entered into these unidentified third-party contracts on behalf of the Borrowers "with the reasonable expectation that the Assets would pay for the benefits received from them." Plaintiffs' Memorandum in Opposition [32], pg 5. Then, they leap to the conclusion that defendants, as the Receiver and Special Servicer, had a "good faith" obligation to take steps to satisfy these obligations. Plaintiffs' Memorandum in Opposition [32], pg. 5. There is no factual support anywhere in the amended complaint for this conclusion and furthermore, such a conclusion fails to allege sufficient facts demonstrating knowledge on the part of the defendants.

Finally, plaintiffs needed to allege sufficient facts to demonstrate that the defendants' actions were without justification or excuse. Count VII contains only the conclusory allegation that defendants' actions were without justification.

> "105. Without any justification, or insufficient justification, Defendants interfered with the contracts and reasonable expectancies of Ariel. Ariel believes that these obligations to third parties for services and products provided total in excess of $500,000."

Plaintiffs' Amended Complaint [20], pg. 28. Nowhere in their amended complaint do the

---

[7]The Court notes that plaintiffs' amended complaint, as well as Count VII, is confusing as to whether plaintiffs are asserting tortious interference with actual third-party contracts or with reasonable business expectancies. However, regardless of which one, the fact remains that plaintiffs have failed to plead knowledge on the part of the defendants of these contracts or business expectancies. Instead, they simply allege that they entered into "business relationships" with third-parties, that by virtue of these relationships the Assets would pay the obligations for the benefits received by the plaintiffs' third-party contracts, and that defendants assumed these obligations. Again, such allegations are merely conclusions without any factual support and fail to allege clearly knowledge on the part of the defendants.

9

plaintiffs assert the "improper means" by which the defendants breached these unidentified third-party contracts. Throughout their amended complaint, plaintiffs assert that the defendants assumed the property management and leasing services plaintiff Ariel had performed. Once the defendants took over Ariel's management and leasing duties, plaintiffs make general assertions that defendants refused to pay Ariel, continued to use the Ariel trademarks, hired away key employees of Ariel, and have refused or delayed payments "of trade payables of the Assets". Plaintiffs provide no factual support whatsoever that any of these alleged actions constitute "improper means" intended to interfere with the unidentified third-party contracts. All plaintiffs have alleged is that these acts "were undertaken with the specific intent to weaken Ariel and the Partnership" so that the defendants could take over Ariel's business. Notwithstanding the fact that this is merely a conclusion unsupported by any factual allegations, it still does not meet the pleading requirement for "improper means". For example, although plaintiffs allege that defendants "hired away key employees", nowhere in the amended complaint are the "key employees" identified or is there any facts alleged as to why such action constitutes "improper means" facilitating the breaching of any employment contracts. It is not until the plaintiffs filed their memorandum in opposition that the existence of any employment contracts is even raised At best, throughout the amended complaint, plaintiffs make conclusory allegations requiring the Court to make an inappropriate "inferential leap" regarding what improper means defendants engaged in to tortiously interfere with the unidentified third-party contracts. *See*, iCARD, at *5, n.4.

     Plaintiffs have failed to state a claim for tortious interference with contracts and/or business expectancies because they have failed to plead the necessary elements that defendants

had knowledge of any third-party contracts or business expectancies, or that the defendants acted improperly and without justification.

### Count IX - Fraud

In Count IX, plaintiffs assert fraud in connection with three alleged misrepresentations: 1) defendants induced the plaintiff to enter into the "draft" Trademark License Agreement with an oral promise to substitute a future new licensing agreement; 2) defendants induced the plaintiffs to continue their management services by representing that the defendants would pay management fees and leasing commissions; and 3) defendants induced the plaintiffs to continue their management services while failing to disclose the defendants' alleged intention to replace Ariel as the property manager and alleged intention to "weaken Ariel". Plaintiffs' Amended Complaint [20], pg. 30-31, ¶¶118-120. Defendants contend that the plaintiffs have failed to plead their fraud claim with the level of particularity required by Rule 9 Federal Rules of Civil Procedure and/or to plead their fraud claim with the requisite "intent to turn a promise for future action into a knowing misrepresentation" as required under Missouri law. Plaintiffs contend that they have pled their fraud claim with the requisite particularity of Rule 9 and the requisite "knowledge" element required under Missouri law.

Fraudulent inducement is a subset of fraudulent misrepresentation. Bracht v. Grushewsky, 448 F.Supp.2d. 1103, 1110 (E.D.Mo. 2006); Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d. 758, 763 (Mo. 2007). The elements of fraudulent misrepresentation are : 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity or his ignorance of its truth; 50 the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the truth of the representation; and 8) the hearer's

11

consequent and proximately caused injury.  Renaissance Leasing, LLC v. Vermeer Manufacturing Co., 322 S.W.3d. 112, 131-32 (Mo. 2010); *see*, Cole v. Homier Distributing Co., at 862; Harvey, Jr. v. Citimortgage, Inc., et. al., 2011 WL 1226973, *5 (E.D.Mo. March 29, 2011); Brazile v. Sara Lee Corp., 2010 WL 3872437, *5 (E.D.Mo. September 28, 2010); Moody v. Kramer & Frank, P.C., 2010 WL 883660, *3 (E.D.Mo. March 5, 2010).  Fraudulent inducement occurs when a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties or obligations involved.  Bracht v. Grushewsky, at 1110; Harvey, Jr., *supra*. (*citing* Bracht);  Brazile, *supra.* (*citing* Bracht).

In order for a misrepresentation to be the basis of a fraudulent inducement claim, the alleged misrepresentation "must relate to a past or existing fact." Trotter's Corp.  v. Ringleader Restaurants, Inc., 929 S.W.2d. 935, 940 (Mo.App. 1996).  "Mere statements of opinion, expectations, and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation."  Trotter, at 940.  "One cannot predicate a fraud action upon a statement regarding what independent third parties will do in the future.  Because a statement about the future actions of third parties is really a prediction rather than a promise, this rule is just a corollary of another Missouri rule that predictions for the future are not actionable as fraudulent misrepresentations."  Sindecuse v. Katsaros, et. al.*,* 541 F.3d. 801, 803 (8th Cir. 2008)(citations omitted).  A party's promise to take future action may be considered a misrepresentation of an existing fact, and actionable as fraud, but only if it is accompanied by a present intention not to perform.  Sindecuse, at 803-04 *citing* Trotter's Corp., at 940.  Thus, a promise to take future action is not actionable "absent an allegation that the maker did not presently intend to perform" because "[t]he mere breach of promise or failure to perform does not constitute a

12

misrepresentation of fact or create a separate claim for fraud." Trotter's Corp. at 940 (internal citations omitted).

When pleading a claim of fraud/fraudulent misrepresentation in federal court, the claim must comply with the heightened pleading requirements of Rule 9(b) Fed.R.Civ.P. which requires plaintiffs to "state with particularity the circumstances constituting fraud . . .". Under Rule 9(b), plaintiffs must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up." BJC Health System v. Columbia Casualty Co., 478 F.3d. 908, 917 (8th Cir. 2007) *quoting* Abels v. Farmers Commodities Corp., 259 F.3d. 910, 920 (8th Cir. 2001)(citations omitted); Harvey, Jr. v. Citimortgage, Inc., 2011 WL 1226973, at *5 (*citing* BJC Health Systems, *supra.*); Wilson v Bank of America, 2010 WL 3843781, *3 (E.D.Mo. September 27, 2010)(*citing* Drobnak v. Anderson Corp., 561 F.3d. 778, 783 (8th Cir. 2009)); Akers v. RSC Equipment Rental, Inc., 2010 WL 2757284, *5 (E.D.Mo. July 12, 2010)(*citing* Abels, *supra.*).  In other words, the plaintiffs must typically identify the "who, what, where, when and how" of the alleged fraud. BJC Health Systems, at 917 *quoting* United States ex. rel. Costner v. URS Consultants, 317 F.3d. 883, 888 (8th Cir. 2003); Harvey, Jr., *supra.* (*citing* Costner, *supra.*); Akers, *supra.* (*citing* Costner, *supra.*). This requirement is designed to enable defendants to respond specifically, in the early stages of a lawsuit, to potentially damaging allegations of immoral and criminal conduct. BJC Health Systems, at 917 *citing* Abels, *supra.*; Akers, *supra.* (*citing* Abels, *supra.*). Although Rule 9(b) should be read in harmony with the principles of federal notice pleading, "[c]onclusionary allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.". BJC Health Systems, at 917 *quoting* Commercial Property Investments v. Quality Inns Int'l, Inc., 61 F.3d. 639, 644 (8th Cir. 1995); Akers, *supra.* (*quoting* Commercial Property

Investments, *supra.*); McKay v. GMAC Mortgage, LLC., 2010 WL 2518590, *2 (E.D.Mo. June 14, 2010)(*quoting* Commercial Property Investments, *supra.*).

The Court has carefully reviewed the plaintiffs' amended complaint, as well as its responsive pleading to the motion to dismiss. Plaintiffs' responsive pleading again for the most part simply attempts to argue the merits of its lawsuit. They repeat the undisputed elements of a fraudulent misrepresentation claim but fail to note where in their complaint they specifically meet the pleading requirements for each of the elements.

Firstly, nowhere in the actual fraud claim, as contained in Count IX, do the plaintiffs allege that the defendants made their alleged misrepresentations with a present intent not to perform. Moreover, plaintiffs fail to identify where else in the complaint they have alleged that the defendants either knowingly made a false representation with a present intent not to perform. Instead, it appears that plaintiffs are grounding their fraud claim on the fact that the events "promised" did not occur. However, "the necessary intent cannot be established merely be pointing to the defendant's subsequent breach.". Cole v. Homier Distributing Co., at 864 (citations omitted); *see*, Trotter's Corp., at 940 ("The mere breach of promise or failure to perform does not constitute a misrepresentation of fact or create a separate claim for fraud.")(citation omitted); *see also*, Renaissance Leasing, Inc. v. Vermeer Manufacturing Co., 322 S.W.3d. 112, 133 (Mo. 2010)("The failure of performance does not establish intent."). The plaintiffs' allegations do no more than allege that promises were made which were later broken. This is insufficient to state a claim for fraud.

Having considered the plaintiffs' allegations in a light most favorable to them, and drawing all reasonable inferences in their favor, the Court finds that the plaintiffs have failed to allege facts

14

that plausibly could suggest that the defendants intended not to perform at the time they made the alleged misrepresentations.

Furthermore, the plaintiffs have failed to plead with the particularity required by Rule 9(b). The fraud count itself (Count IX) lacks any of the requisite facts (who, what, when, where, and how) with respect to any of the three alleged misrepresentations. Moreover, plaintiffs simply state that the "defendants" generally made false representations to induce the plaintiffs to continue with their management services and to allow defendants to use the subject trademarks. "It is not sufficient to attribute alleged false statements to `defendants' generally.". Trooien v. Mansour, 608 F.3d. 1020, 1030 (8th Cir. 2010)(*citing* Parnes v. Gateway 2000, Inc., 122 F.3d. 539, 550 (8th Cir. 1997)).

Elsewhere in the complaint, plaintiffs have still failed to state their fraud claim with the requisite particularity. With respect to the alleged promise to replace the "draft" trademark license agreement with a "final" trademark license agreement, plaintiffs allege that on August 29, 2009 James DeAngelo and Alex Rivero of defendant CW called a "principal of Ariel" and made some type of "threat" that the continuation of the payment of management fees was hinged on an agreement being reached on the continued use of the subject Ariel trademarks. Amended Complaint [20], pg. 7, ¶27. Plaintiffs never identify this "principal of Ariel" to whom this alleged threat was made. The plaintiffs then continue to allege that drafts went back and forth between Ariel and CW but again fail to identify to whom these drafts went back and forth. Finally, plaintiffs allege that "CW insisted on execution of their Draft Agreement, but provided a verbal agreement to replace it with an acceptable agreement promptly in the future."; and based on "CW's representations the licensing agreement would be modified" the plaintiffs signed the "draft" agreement. Amended Complaint [20], pg. 7, ¶¶27-29. Again, plaintiffs never identify

15

who specifically made this representation, what exactly was said, when exactly this representation was made, and to whom this representation was made.

With respect to the alleged promise to pay the management fees and leasing commissions, plaintiffs again fail to identify who made this representation, what exactly was stated, and to whom the representation was made. Plaintiffs simply allege that "representatives of the Partnership, Ariel, and CW" had a meeting on August 18, 2009 and that a "verbal agreement" was reached wherein "CW to pay Ariel" certain *pro rata* management fees. Amended Complaint [20], pg. 6-7, ¶26. These "representatives" are not identified nor or the specifics of the "verbal agreement" provided other than a "portion of outstanding fees" for July and August were to be paid, along with a $50,000 advance management fee payment for September totaling $260,00.00. However, other than the $50,000 September payment and the ultimate total payment of $260,000.00, no other details of this "verbal agreement" are provided.

With respect to the alleged omissions, plaintiffs have similarly failed to plead with the specificity required of Rule 9(b). Plaintiffs have failed to allege the "who, what, when, where, and how" of their fraudulent omission[8] claim.

Fraudulent omission, like fraudulent inducement, is a variation of fraudulent misrepresentation. Moses.Com Securities v. Comprehensive Software Systems, 406 F.3d. 1052, 1064 (8th Cir. 2005); Gannon Joint Venture Limited Partnership v. Masonite Corp., 2008 WL 2074108, *4 (E.D.Mo. May 14, 2008)(Missouri does not recognize fraudulent nondisclosure as a separate tort). To state a claim for fraudulent omission, plaintiffs must allege the same elements

---

[8]The Court's review of the relevant caselaw reveals that a "fraudulent omission" claim is often also referred to as a "fraudulent concealment" claim. These two terms may be used interchangeably and in the context of the present case, both terms referred to the claim as contained in Count IX that defendants omitted to tell the plaintiffs of their intention to replace Ariel as the Assets' property manager and leasing agent.

required to establish a claim for fraudulent misrepresentation; however, "[s]ilence may amount to a representation, constituting the first element of fraudulent misrepresentation, if the party sought to be held accountable for the fraud (1) conceals material facts and (2) has a legal duty to disclose such facts.". Moses.com Securities, at 1064 (citations omitted); *see*, In re General Motors Corp. Anti-Lock Brake Products Liability Litigation, 966 F.Supp. 1525, 1536 (duty to disclose is a required element of claim for fraudulent concealment), *aff'd* 172 F.3d. 623 (8th Cir. 1999); Gannon Joint Venture Limited Partnership, *supra.*; Owen v. General Motors Corp., 2007 WL 172355, *4 (W.D.Mo. January 18, 2007); Reeves v. Keesler, 921 S.W.2d. 16, 21 (Mo.App. 1996)(Concealment of a fact which a party has a duty to disclose properly serves as a substitute element for a false representation in the tort of fraudulent misrepresentation). A legal duty to speak arises when there is a confidential or fiduciary relationship, when there is privity of contract, or when one party has superior knowledge or information regarding a material fact not readily available to the other party. Moses.com Securities, at 1064 (citation omitted); In re General Motors Corp. Anti-Lock Brake Products Liability Litigation, 966 F.Supp. at 1535; Gannon Joint Venture Limited Partnership, *supra.*; Owen v. General Motors Corp., *supra.*; Reeves v. Keesler, at 21.

In the present case, plaintiffs have failed to allege a legal duty for the defendants to disclose their alleged intention not to retain Ariel as the Assets' property manager and leasing agent based upon any confidential or fiduciary relationship. Throughout their complaint, plaintiffs repeatedly assert that CW was named as a "special servicer" for the lenders' security interest in the Assets, that defendant Meno was appointed by a Georgia court as a "Receiver" to protect the financial integrity of the Assets and to maintain the revenue producing operation of the Assets,

17

and that defendant Woodmont was "hired" by Meno to takeover the management and leasing duties. Plaintiffs' Amended Complaint [20], pgs. 6, 8, ¶¶22, 32, 34.

Plaintiffs further fail to allege that any legal duty to disclose that defendants were replacing Ariel as the Assets' property manager and leasing agent arose from any contract between the defendants and the plaintiffs as to Ariel's retention as property manager and leasing agent. Plaintiffs go to great length to allege numerous allegedly wrongful acts by defendants "intended" to weaken Ariel to the point wherein it might not be able to function fully as the Assets' property manager and leasing agent but they still fail to state any contractual relationship giving rise to any legal duty of defendants to disclose a business decision. Finally, plaintiffs fail to allege that a legal duty to disclose arose from some superior knowledge of a material fact. All plaintiffs have done is allege that defendants carried out allegedly wrongful acts in order to hide their business decision to ultimately replace Ariel as the Assets' property manager and leasing agent. Furthermore, plaintiffs have failed to allege that the plaintiffs exercised due diligence to discover such information. Plaintiffs have failed to allege sufficient facts which support imposing a duty to disclose on the defendants; thus, they have failed to plead the first element of a claim for fraudulent omission.

Plaintiffs have also failed to plead their fraudulent omission claim with the specificity required of Rule 9(b). "A plaintiff bringing a claim for fraudulent omission must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." In re General Motors Corp. Anti-Lock Brake Products Liability Litigation, at 1536 (citations omitted). Count IX fails to meet this pleading standard in so far as it fails to identify who is responsible for the alleged fraudulent omission, fails to explain the context of the omission

as to the connection between delaying payments to Ariel and hiring key personnel away from Ariel, and how defendants misled Ariel by not disclosing its business judgment not to retain Ariel as the Assets' property manager and leasing agent.

Plaintiffs have failed to plead fraudulent concealment with the specificity required under Rule 9(b).

In conclusion, the plaintiffs have failed to plead all the requisite elements of their claims for tortious interference and fraud as contained in Counts VII and IX, as well as failing to plead fraud with particularity as required by Rule 9(b) Fed.R.Civ.P. The Court further believes, upon review of the parties' pleadings, that any further amendment would not cure the deficiencies present in these particular counts. The Court will grant the defendants' motion to dismiss Counts VII and IX of the plaintiffs' amended complaint.

Dated this __28th__ day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE