UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARIEL PREFERRED RETAIL GROUP, LLC., ET. AL., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No.4:10CV623SNLJ |
| CWCAPITAL ASSET MANAGEMENT, ET. AL., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the plaintiffs' first motion to compel [37], filed August 9, 2011.  Responsive pleadings have now all been filed and this matter is ripe for disposition.

Plaintiffs seek discovery responses to a large number of discovery interrogatories and requests for production regarding numerous categories of information.[1]  Defendants contend that the information sought is not discoverable because either the information pertains to the dismissed claims for fraud and tortious interference with a business relationship (Counts VII and

---

[1]Plaintiffs provide a lengthy narrative in their motion, memorandum in support thereof, and their reply memorandum concerning this discovery dispute; however, they fail to clearly delineate specifically the interrogatories and production requests that are in dispute.  Instead, they argue "categories of information" which they seek from the defendants. *See*, Plaintiffs' Motion to Compel, pgs 31-32 listing sixteen (16) "categories of information" without a single notation to any specific interrogatory or production request.  It has taken the Court considerable time to sort out the pleadings in order to clearly identify which interrogatories and production requests are in dispute.  In the future, counsel shall not simply identify "categories of information" but rather provide the Court with a precise listing of the specific interrogatories and production requests that are in dispute.

IX of the plaintiffs' amended complaint)[2] and/or the requested information is not relevant to any remaining claim in the plaintiffs' amended complaint.

The Court believes the following discovery is in dispute:

**Interrogatories**: 8, 9, 11 and 12

**First Requests for Production**: 4, 5, 8, 11, 12, 13, 15, 16, 20, 21, 28, 32, 34, 35, 36, 37, 39, 40, 43, 44, 45, 46, 47, 48, 49, 63, 65, 70., 72, 73, 74, 80, 82, 83, 84, 89, 90, 91, 93, and 96

**Second Requests for Production**: 7

The Court has carefully reviewed the parties' pleadings, the submitted exhibits, and the disputed discovery in reaching its determination regarding the instant motion.

A brief synopsis of the background giving rise to this litigation is necessary in order to give context to the Court's ultimate decision regarding the instant discovery dispute(s). This litigation arises out of a complicated business relationship involving the management of certain financially distressed premium retail outlet malls. Plaintiff Ariel acted as the property manager and leasing agent for these malls (which the parties referred to as "Assets"). The owners of these malls (hereinafter referred to as the "Borrowers") defaulted on the financing loans for these properties in 2009.

The exact nature of the relationship between the plaintiffs and the Borrowers is the subject of some dispute between the parties. However, for purposes of the instant matter only, the Court presumes that Prescott Capital Management, LLC is an "affiliate" of plaintiff Prescott

---

[2] *See*, Court Order and Memorandum [55 and 56] dismissing Counts VII and IX of the plaintiffs' amended complaint.

Group. In 2005, Prescott Capital Management created plaintiff Ariel Preferred Retail Group to professionally manage, lease and provide development services to the Assets; while, plaintiff Prescott provided substantial investment in the development and ownership of certain trademarks used in conjunction with the marketing of the Assets. Again, for purposes of the instant matter only, the Court presumes that plaintiff Prescott authorized plaintiff Ariel to use the subject trademarks as part of its management of the Assets.

After the Borrowers defaulted on their financing loans, defendant CWCapital Asset Management was retained as the Special Servicer on the loans in June 2009. As a Special Servicer, CW assumed financial control of the Assets and worked with loan servicers and loan trustees, as well as with the Borrowers, to evaluate options and potential restructuring of the financial backing of the Assets. Plaintiff Ariel continued to manage the subject properties until the Superior Court of Gwinette County, Georgia entered a consent order on December 16, 2009 appointing defendant Fred Meno as Receiver. As Receiver, defendant Meno assumed immediate possession and full control of the troubled properties. He contracted with his employer, defendant Woodmont, to perform the property management and leasing services pursuant to the consent order.

After CW was retained as the Special Servicer, and prior to defendant Meno's appointment as Receiver, the plaintiffs signed a trademark licensing agreement that authorized CW and any appointed receiver to use Ariel's trademarks in connection with the management of the Assets.[3] Between August 2009 and December 2009 the parties unsuccessfully attempted to

---

[3]The nature and duration of this trademark licensing agreement is the core of the dispute in this case. Plaintiffs contend that this was a "draft" trademark licensing agreement meant only to be temporary and that a later final licensing agreement was to be signed by the parties; the

negotiate a subsequent trademark licensing agreement.

In September 2011, this Court dismissed two (2) claims from the plaintiffs' amended complaint: a claim for tortious interference with a contract and/or business relationship; and a claim for fraud.  *See*, Court Order [55 and 56].  The remaining claims in this case are as follows: Count I - trademark infringement (federal); Count II - false designation of origin and unfair competition (federal); Count III - trademark infringement (state common law); Count IV - trademark infringement (state statutory); Count V - breach of contract; Count VI - unjust enrichment; and Count VIII - unfair competition.

It is important to understand the substance of the plaintiffs' complaint as it now stands; i.e. what it alleges and what it does not allege.  The trademark infringement claims assert that defendants continue to use the plaintiffs' trademarks in marketing the Assets after termination of Ariel as the manager of the subject properties.  The breach of contract claim asserts that defendants have failed to pay plaintiff its contractual management fees and leasing commissions. The unjust enrichment claim asserts that defendants failed to pay the afore-referenced fees while retaining Ariel's services. The unfair competition claim asserts that defendants took certain actions to undermine plaintiff Ariel as a competitor in the field of commercial properties management and leasing.

What is not a part of the amended complaint are legal claims pertaining to the restructuring of the loan(s) between the Borrowers (non-parties to this case) and defendant CW

---

defendants consider this licensing agreement to be the "final" trademark licensing agreement. Once again, for purposes of the instant motion, the Court does not need to nor will make any finding whatsoever as to the nature and duration of the trademark licensing agreement that was in place from August 2009 through December 2009, or whether it continued in force and effect past December 2009.

as the Special Servicer.  Furthermore, what is not in amended complaint are legal claims pertaining to any legal obligation that the defendants had to retain plaintiff Ariel as the property manager once the loans were defaulted and/or when the Georgia court appointed defendant Meno as the Receiver.  Finally, what is not in the amended complaint are legal claims asserting that the defendants acted in a "conspiracy" to further their own financial gain to the detriment of the Bondholders (again, not parties to this case).  "Intent" and "motive" may have been germane to the now-dismissed fraud and tortious interference claims, but are no longer pertinent to the remaining claims.  Although plaintiffs also maintain that defendant CW's "intent to hurt Ariel. . . is also relevant to the plaintiffs' infringement claims because willful conduct allows for the recovery of damages and attorney's fees [under] 15 U.S.C. § 1117 (a)," CW does not deny that is was acting willfully.  Rather, the issue is whether CW's willful use of the trademark was or was not lawful.  CW's intent, then, is irrelevant.

Given this background, the Court has carefully reviewed the disputed discovery and finds that it seeks information not relevant to any of the remaining claims in this cause of action.

Under Federal Rule of Civil Procedure Rule 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." "Broad discovery is an important tool for the litigant, and so `[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'"  WWP, Inc. v. Wounded Warriors Family Support, 628 F.3d. 1032, 1039 (8th Cir. 2011)(*quoting* Rule 26(b)(1)); see also, Highmark, Inc. v. Northwest Pipe Co., 2012 WL 997007, *7 (D.S.D. March 23, 2012) *citing* WWP, Inc., *supra*.  However, although the standard of relevance in the context of discovery may be broader than in the context of

admissability, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery."  Hofer v. Mack Truck, Inc., 981 F.2d. 377, 380 (8th Cir. 1993).  Thus, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  Hofer v Mack Truck, at 380.  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." EEOC v, Woodmen of the World Life Ins. Society, 2007 WL 1217919, *1 (D.Neb. March 15, 2007)(*citing* Cervantes v. Time, Inc., 464 F.2d. 986,994 (8th Cir. 1972)); *see*, Kirschenman v. Auto-Owners Ins., 2012 WL 548857*5 (D.S.D. February 21, 2012)(*citing* EEOC v. Woodmen of the World Life Ins. Society, *supra.*).

After the movant has met this burden of relevancy, the party opposing the motion bears the burden of establishing the lack of relevancy or that complying with the motion would be unduly burdensome, expensive, and/or oppressive.  Highmark v. Northwest Pipe Co., at *6 (*citing* St. Paul Reinsurance Co. v. Commerical Finance Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000)); Nixon v. Enterprise Car Sales Co., 2011 WL 1627170, *1 (E.D.Mo. April 26, 2011)(*citing* St. Paul Reinsurance Co., *supra.*).  Bare assertions of undue burden, significant expense, or oppression are not ordinarily sufficient to withstand a motion to compel.  Highmark v. Northwest Pipe Co., at *6 (*citing* St. Paul Reinsurance Co., *supra.*); Nixon, at *1 (*citing* Nixon, *supra.*).

The Advisory Committee's Note to the 2000 Amendments to Rule 26(b)(1)[4] provide guidance as to how courts should define the scope of discovery in a civil case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action . . . In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signifies to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

2000 Advisory Notes (GAP Report) to Rule 26(b)(1); *see also*, Kirschenman, at *4-*5.

Finally, the 2000 Advisory Notes clarify that the information sought is discoverable only if it is relevant to the claims or defenses of the case, or "relevant to the subject matter involved in

---

[4] Although Rule 26 has been subject to certain revisions since 2000, Rule 26(b)(1) has not been the subject of significant revision since 2000.

the action if the court has ordered discovery to that limit based on a showing of good cause."
2000 Advisory Notes (GAP Report) to Rule 26(b)(1); *see also*, Kirschenman, at *5.

The information sought primarily relates to the attempted restructuring of the defaulted loans, the business relationship among the defendants, and the "illicit motives" of the defendants. None of this is relevant to the pending claims in this lawsuit. The subject matter of this lawsuit is the use of the plaintiffs' trademarks (which interestingly defendants have already conceded albeit not improperly), whatever damages may have ensued by this allegedly unlawful use of the trademarks, and what, if any, fees plaintiffs may be entitled to for services allegedly rendered. By the plaintiffs' own admissions, this disputed discovery primarily relates to its claims for tortious interference and fraud, claims that have been dismissed from this cause of action.  It would not be reasonable for this Court to expand the scope of discovery to matters that have little, if any, relation to the claims presently at issue.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiffs' motion to compel [37] be and is **DENIED.**

Dated this 9th  day of May, 2012.

```
                                    _____
                                    STEPHEN N. LIMBAUGH, JR.
                                    UNITED STATES DISTRICT JUDGE
```